

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

October 23, 2024

**By ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Shmuel Abraham,* S1 20 Cr. 411 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter in advance of the sentencing of Shmuel Abraham scheduled for October 30, 2024. The defendant, along with his three co-defendants, participated in a multi-year scheme to defraud online retailer and e-commerce platform Amazon.com. Through a combination of deceptive practices that included overshipping, product substitution, and unit manipulation, as described in greater detail below, Shmuel Abraham and his co-defendants tricked Amazon's automated systems into paying for items that Amazon had never ordered, often at grossly inflated prices, and in excessive quantities. As set forth in the Presentence Investigation report ("PSR") and in the plea agreement, the stipulated Guidelines range is 37 to 46 months' imprisonment.[1] The Government respectfully submits that a sentence at the low-end of the stipulated Guidelines would be sufficient, but not greater than necessary, to reflect the goals of sentencing.

    **A.**    **Offense Conduct**

    The defendant was charged, along with three co-defendants (three of his siblings), with participating in a wide-ranging scheme to defraud Amazon. (PSR ¶ 21). From at least 2017 through at least 2019, the defendant and his co-conspirators registered and opened third-party seller and vendor accounts on Amazon's online platform to sell consumer goods. *Id.* Through these accounts, the defendants transitioned from selling items to third parties to selling items to Amazon directly, effectively as small-scale wholesalers. During the charged period, the

---

[1] As discussed below, this stipulated range is calculated under the revised November 1, 2023, edition of the Unites States Sentencing Guidelines.

defendants systematically defrauded Amazon by tricking its automated ordering, receiving, and payment systems into issuing wildly inflated payments for items that Amazon had not ordered, and in excessive volumes. The defendants carried out the scheme through a variety of deceptive practices, which they often deployed simultaneously. First, the defendants exploited a weakness in Amazon's automated systems and intentionally shipped excessive quantities of goods in response to purchase orders, a practice known as "overshipping." The defendants confirmed purchase orders from Amazon for specific goods (identified by a unique alphanumeric identified called an "ASIN"), in specific quantities, specific configurations, and at specific prices, and then shipped vastly greater quantities of the product. Second, after accepting a purchase order for a particular item (identified by ASIN), the defendants often edited the online product pages associated with the ASIN and changed the configuration of the product to inflate the price dramatically (instead of a 10-pack for $10, a single item for $10), and then overshipped these outrageously priced items. Third, the defendants at times substituted different products of far lesser value for items that Amazon had ordered and then overshipped the inferior (and unwanted) products. (*See generally*, PSR ¶¶ 15, 16, 23-29; Exhibit 4A – Revised; Victim Losses with Attribution, attached hereto as Exhibit 6).

Each defendant engaged in a unique mix of these deceptive practices, and to varying degrees. Shmuel Abraham chiefly engaged in unit manipulation and overshipping. Three examples set forth in Exhibit 6 suffice to illustrate the defendant's offense conduct with respect to unit manipulation. For instance, in one transaction the defendant confirmed a purchase order for a two-pack of soap, each pack containing 50 bars (for a total of 100 bars), at a price of $169.99. (Exhibit 6, at 2).[2] The defendant subsequently edited the product page corresponding to this item to reflect two bars of soap for $169.99, then shipped 3770 units and invoiced Amazon $628,045. In another transaction, the defendant accepted a purchase order for a single unit of a 16-pack of soap (totaling 16 bars of soap) at a price of $34.04 per pack. (Ex. 6 at 2). The defendant subsequently edited the product page corresponding to this item to reflect a single bar of soap for $34.04, then shipped 18,334 individual bars of soap for $34.04 each, and invoiced Amazon $545,083. In yet another transaction, the defendant accepted a purchase order for a single, 72-pack of soap (totaling 72 bars of soap), at a price of $175.71. The defendant subsequently edited the product page corresponding to this item to reflect a single bar of soap for $175.71, and invoiced Amazon $420,698. As reflected in Exhibit 6, Amazon's losses from Shmuel Abraham's combination of unit manipulation/overshipping for just the handful transactions analyzed therein totals $2,291,651.89.[3]

The defendant also defrauded Amazon by engaging in overshipping without unit manipulation. As the Court is well-aware, the Court previously directed the Government to calculate the intended loss for all defendants using Exhibit 4A. (*See* ECF Nos. 224 and 226).[4] The Court issued this order in connection with its rulings regarding the appropriate method of loss

---

[2] Also filed as Exhibit 6 in connection with the sentencing of co-defendant Yoel Abraham. (ECF No. 189).

[3] See Government Supplemental Sentencing Letter, ECF No. 189 at p. 4.

[4] As noted in the Government's letter of September 16, 2024, Exhibit 4A-Revised is an updated version of Exhibit 4A and has been used as the basis for calculating the intended loss for all defendants at sentencing. (ECF No. 253)

calculation under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section § 2B1.1, and the appropriate factual basis for same, during the sentencing of co-defendant Yoel Abraham on September 5, 2024. (ECF No. 223). Based on those rulings, and as reflected in the Government's analysis pursuant to the Court's rulings, the intended loss attributable to Shmuel Abraham from overshipping alone is $9,418,575.68. (ECF No. 253).

Throughout the charged period, the defendant and his co-defendants maintained an ongoing WhatsApp text chain in which they discussed at length their "business" with Amazon and how best to defraud Amazon.[5] They also discussed mutual acquaintances who engaged in similar types of fraud against Amazon. These communications make clear that the defendants knew their overshipping and unit substitution was wrong, that it violated the policies they had agreed to abide by when they agreed to do business with Amazon, and that Amazon would cease doing business with them if it discovered their fraudulent misconduct.

In a typical exchange, set forth below, the defendant freely informed his co-defendants that he had come close to making a "million profit in a week" by overshipping and that one could "fuck them [Amazon] a lot" through overshipping and other deceptive practices:

| 270 | 120108 | 18455179000@s.whatsapp.net Y.A. | I'm so in the mood to fuck Amazon | 5/1/2018 4:42:44 AM(UTC+0) |
|---|---|---|---|---|
| 271 | 120109 | 18455179000@s.whatsapp.net Y.A. | Did anyone try to overship and make a million profit a week? _x005F_xD83E__x005F_xDD13__x005F_xD83E__x005F_xDDD0_ [smiley and winking emoji] | 5/1/2018 4:43:17 AM(UTC+0) |

---

[5] All citations to texts messages below are imaged excerpts from an Excel extraction produced under USAO_00006030. The defendants' WhatsApp text group consists of a mix of text messages and lengthy voice memos, in English and Yiddish. Text in red reflects a draft translation and/or paraphrase of text in Yiddish. The numbers in the column on the left reflect a chronological order to the messages; certain messages have been paraphrased, as denoted by square parentheticals.

| | | | | |
|---|---|---|---|---|
| 276 | 120114 | 18452320939@s.whatsapp.net Shmule L. Abraham | _x005F_xD83D__x005F_xDC4B_ [hand wave] | 5/1/2018 4:48:34 AM(UTC+0) |
| 277 | 120115 | 18452320939@s.whatsapp.net Shmule L. Abraham | Like over they order 1 unit to over ship to make a million what do you mean over ship ? | 5/1/2018 4:49:24 AM(UTC+0) |
| 278 | 120116 | 18455179000@s.whatsapp.net Y.A. | Yes exactly | 5/1/2018 4:49:57 AM(UTC+0) |
| 279 | 120117 | 18455179000@s.whatsapp.net Y.A. | You just send in 100,000 units | 5/1/2018 4:50:18 AM(UTC+0) |
| 280 | 120118 | 18455179000@s.whatsapp.net Y.A. | $10 profit each unit is a million | 5/1/2018 4:50:46 AM(UTC+0) |
| 281 | 120119 | 18452320939@s.whatsapp.net Shmule L. Abraham | No didn't tried this yet but tried already different things and it worked | 5/1/2018 4:51:01 AM(UTC+0) |
| 282 | 120120 | 18455179000@s.whatsapp.net Y.A. | Like what | 5/1/2018 4:51:12 AM(UTC+0) |
| 283 | 120121 | 18452320939@s.whatsapp.net Shmule L. Abraham | _x005F_xD83D__x005F_xDED1_ [stop sign] Do not enter 🖐 | 5/1/2018 4:52:02 AM(UTC+0) |
| 284 | 120122 | 18455707628@s.whatsapp.net Zisha Abraham | What's the cost of each unit ? | 5/1/2018 4:53:38 AM(UTC+0) |
| 285 | 120123 | 18452320939@s.whatsapp.net Shmule L. Abraham | Some how it's not going to work I don't know yet why but I feel so | 5/1/2018 4:55:41 AM(UTC+0) |
| 286 | 120124 | 18452320939@s.whatsapp.net Shmule L. Abraham | Just make sure you have another account | 5/1/2018 4:55:57 AM(UTC+0) |
| 287 | 120125 | 18452320939@s.whatsapp.net Shmule L. Abraham | But you can fuck them a lot | 5/1/2018 4:56:09 AM(UTC+0) |
| 288 | 120126 | 18452320939@s.whatsapp.net Shmule L. Abraham | When it's to big numbers fast they will lock you out | 5/1/2018 4:56:31 AM(UTC+0) |

Shmuel was particularly interested in embezzling large amounts quickly, notwithstanding the risk. For instance, he routinely advised his older brother and co-defendant, Heshl Abraham, how to do it most effectively, including by maintaining more than one vendor account:

| 147 | 113475 | 18454006839@s.whatsapp.net Heshl Abraham | I came up with a new strategy like this: if they order from a listing with bad ranking only send 12 units, if good ranking then you decide how much money you wanna make that week. Makes sense? _x005F_xD83E__x005F_xDD14_ | 3/20/2018 4:26:36 AM(UTC+0) |
|---|---|---|---|---|
| 148 | 113476 | 18452320939@s.whatsapp.net Shmule L. Abraham | No because for the next 3 months they only order bad ranking so I'm not supposed to make money in that time ? Huh | 3/20/2018 4:30:10 AM(UTC+0) |
| 149 | 113477 | 18454006839@s.whatsapp.net Heshl Abraham | In the mean time work on finding good listings | 3/20/2018 4:31:02 AM(UTC+0) |
| 150 | 113478 | 18452320939@s.whatsapp.net Shmule L. Abraham | Not my problem what they will do with the 100k units that will never in a live time sell | 3/20/2018 4:31:03 AM(UTC+0) |

| 151 | 113479 | 18452320939@s.whatsapp.net Shmule L. Abraham | Sorry need to make money in that time | 3/20/2018 4:31:16 AM(UTC+0) |
|---|---|---|---|---|
| 152 | 113480 | 18454006839@s.whatsapp.net Heshl Abraham | What is they wanna send it back? | 3/20/2018 4:31:44 AM(UTC+0) |
| 153 | 113481 | 18452320939@s.whatsapp.net Shmule L. Abraham | And what if not ? | 3/20/2018 4:32:12 AM(UTC+0) |
| 154 | 113482 | 18452320939@s.whatsapp.net Shmule L. Abraham | Will get another account | 3/20/2018 4:32:37 AM(UTC+0) |
| 155 | 113483 | 18454006839@s.whatsapp.net Heshl Abraham | and what if u ran out of money? | 3/20/2018 4:33:02 AM(UTC+0) |

In fact, Shmuel was sufficiently committed to defrauding Amazon through overshipping that he even recommended to his co-defendants that they take out lines of credit ("LOCs") to finance large overshipments:

5

| 156 | 113484 | 18452320939@s.whatsapp.net Shmule L. Abraham | Aha so you have a different problem now | 3/20/2018 4:33:27 AM(UTC+0) |
|---|---|---|---|---|
| 157 | 113485 | 18452320939@s.whatsapp.net Shmule L. Abraham | So your problem isn't the ranking your problem is money | 3/20/2018 4:33:47 AM(UTC+0) |
| 158 | 113486 | 18452320939@s.whatsapp.net Shmule L. Abraham | So because that you send in a lot and try to make back fast | 3/20/2018 4:34:28 AM(UTC+0) |
| 159 | 113487 | 18452320939@s.whatsapp.net Shmule L. Abraham | So you have more money | 3/20/2018 4:34:33 AM(UTC+0) |
| 160 | 113488 | 18454006839@s.whatsapp.net Heshl Abraham | kinda also, dont wanna be max out | 3/20/2018 4:34:34 AM(UTC+0) |
| 161 | 113489 | 18452320939@s.whatsapp.net Shmule L. Abraham | Then balance your money by 3 months | 3/20/2018 4:34:55 AM(UTC+0) |
| 162 | 113490 | 18454006839@s.whatsapp.net Heshl Abraham | so whats the limit? | 3/20/2018 4:34:59 AM(UTC+0) |
| 163 | 113491 | 18452320939@s.whatsapp.net Shmule L. Abraham | Let's say you have a 100k you want to invest divided in 3 it's 33k per month then divided in 4 per week | 3/20/2018 4:36:28 AM(UTC+0) |
| 164 | 113492 | 18452320939@s.whatsapp.net Shmule L. Abraham | But I know you have more then 100k to invest and more then me _x005F_xD83D__x005F_xDE0A_ | 3/20/2018 4:36:51 AM(UTC+0) |
| 165 | 113493 | 18454006839@s.whatsapp.net Heshl Abraham | Have to check | 3/20/2018 4:37:42 AM(UTC+0) |
| 166 | 113494 | 18452320939@s.whatsapp.net Shmule L. Abraham | I don't think you will give another מקוה now huh ? | 3/20/2018 4:37:53 AM(UTC+0) |
| 167 | 113495 | 18452320939@s.whatsapp.net Shmule L. Abraham | And go take out a LOC | 3/20/2018 4:38:22 AM(UTC+0) |
| 168 | 113496 | 18454006839@s.whatsapp.net Heshl Abraham | I hear ya, so basically what you saying is, you need to have a budget with a limit how much you can and willing to invest safely per week _x005F_xD83D__x005F_xDC4F__x005F_xD83E__x005F_xDD13_ (clapping and smiley emoji) | 3/20/2018 4:39:14 AM(UTC+0) |

In his conversations regarding overshipping, Shmuel Abraham even encouraged others—including an unindicted co-conspirator, younger than Shmuel Abraham—to defraud Amazon by overshipping aggressively. For instance,

6

| 1100 | 129209 | | I have a item that I'm getting it from wall mart, Vendor send me a po 1 case (case is 100 units) It cost me $4.50 Profit is $5.50 | 6/25/2018 2:17:06 PM(UTC+0) |
|---|---|---|---|---|
| 1101 | 129210 | 18455707628@s.whatsapp.net Zisha Abraham | No no no | 6/25/2018 2:49:06 PM(UTC+0) |
| 1102 | 129211 | 18455707628@s.whatsapp.net Zisha Abraham | Send only what they ordered | 6/25/2018 2:49:13 PM(UTC+0) |
| 1105 | 129214 | 18452320939@s.whatsapp.net Shmule L. Abraham | Wait for a better deal to over ship like crazy | 6/25/2018 3:18:56 PM(UTC+0) |
| 1106 | 129215 | 18452320939@s.whatsapp.net Shmule L. Abraham | Lol | 6/25/2018 3:19:33 PM(UTC+0) |

Shmuel Abraham also advised the same unindicted co-conspirator that he should open multiple vendor accounts, with different identifiers, and use at least one of them to defraud Amazon as much as possible, as quickly as possible:

| 1298 | 130976 | | Ok so only email and corp. Needs to be different Ok got it Tnx | 7/9/2018 5:51:48 PM(UTC+0) |
|---|---|---|---|---|
| 1299 | 130977 | 18452320939@s.whatsapp.net Shmule L. Abraham | The main is that you should be different and make more money and be a חזיר[pig] | 7/9/2018 5:52:38 PM(UTC+0) |
| 1300 | 130978 | 18452320939@s.whatsapp.net Shmule L. Abraham | Do what ever it takes to make money today | 7/9/2018 5:53:25 PM(UTC+0) |

Shmuel Abraham was also among the first of his co-defendants to defraud Amazon by fulfilling (and then overshipping) a single purchase order multiple times—or through multiple separate shipments—and relied on the fact that Amazon's vendor and shipment receipt systems would not detect it. He even claimed credit for inventing for this deceptive practice when he discussed it with his co-defendants:

| | | | | |
|---|---|---|---|---|
| 959 | 128260 | 18454006839@s.whatsapp.net Heshl Abraham | Question: what will happen if I send in an order with a PO that a got a month ago, so the ASN they already received that order, I sent it in then, I realized now and I got up this morning and found another 100 units in my office, I want to send it in to a PO that I got a month ago, will this be ok or will I get chargebacks, I'll put on a proper UPS label, a 2D barcode, it will be mapped to the PO from a month ago, what's involved here? Are there any chargebacks for this? | 6/20/2018 2:48:10 PM(UTC+0) |
| 960 | 128261 | 18454006839@s.whatsapp.net Heshl Abraham | My question is, I'm sending it in regardless, more than what matches the ASN, so whats the difference if I send more at the time when I send the original PO in the first place or afterwards once the PO is already closed, basically they received the first batch, the first order, and now I'm overshipping on that PO, is it a problem that the ASN is old? | 6/20/2018 2:49:02 PM(UTC+0) |
| 961 | 128262 | 18452320939@s.whatsapp.net Shmule L. Abraham | Maybe PO on time but ARN And ASN will not be | 6/20/2018 2:49:48 PM(UTC+0) |
| 962 | 128263 | 18454006839@s.whatsapp.net Heshl Abraham | Lets say I have collect? Can I fight the PO one time? | 6/20/2018 2:50:11 PM(UTC+0) |
| 963 | 128264 | 18454006839@s.whatsapp.net Heshl Abraham | it's not going with an ARN or ASN so what? I'll send it with UPS and there is no ASN, that's a problem? There is a chargeback for that? How do they know that there is no ASN for it? Could it be a problem? | 6/20/2018 2:50:35 PM(UTC+0) |
| 964 | 128265 | 18452320939@s.whatsapp.net Shmule L. Abraham | Oh then I don't know probably not | 6/20/2018 2:50:44 PM(UTC+0) |
| 965 | 128266 | 18452320939@s.whatsapp.net Shmule L. Abraham | Yes there is a arn and asn | 6/20/2018 2:51:03 PM(UTC+0) |
| 966 | 128267 | 18455707628@s.whatsapp.net Zisha Abraham | You can send in a month later no issue, as long the original ARN ASN was fine you good to go | 6/20/2018 2:51:24 PM(UTC+0) |
| 967 | 128268 | 18454006839@s.whatsapp.net Heshl Abraham | Yeah the old one, is it enough? | 6/20/2018 2:51:39 PM(UTC+0) |
| 968 | 128269 | 18452320939@s.whatsapp.net Shmule L. Abraham | Yes | 6/20/2018 2:51:45 PM(UTC+0) |

| 980 | 128281 | 18452320939@s.whatsapp.net Shmule L. Abraham | Why you want to know? | 6/20/2018 2:55:21 PM(UTC+0) |
|---|---|---|---|---|
| 981 | 128282 | 18454006839@s.whatsapp.net Heshl Abraham | No No No, I'm trying to figure out, I want to know, I remember Shmuel Laib told me that you get major chargebacks if you send in on old PO's, you can always send in but there are major chargebacks , I want to know what that was | 6/20/2018 2:55:24 PM(UTC+0) |
| 982 | 128283 | 18455179000@s.whatsapp.net Y.A. | Yes you wanna send in inventory to a closed account,, old thing, my idea _x005F_xD83D__x005F_xDCA1_ | 6/20/2018 2:55:33 PM(UTC+0) |
| 983 | 128284 | 18452320939@s.whatsapp.net Shmule L. Abraham | Fill me in till here and I will help you the rest | 6/20/2018 2:55:45 PM(UTC+0) |
| 984 | 128285 | 18452320939@s.whatsapp.net Shmule L. Abraham | My idea | 6/20/2018 2:55:54 PM(UTC+0) |
| 985 | 128286 | 18452320939@s.whatsapp.net Shmule L. Abraham | Not your @18455179000 | 6/20/2018 2:56:01 PM(UTC+0) |

Shmuel Abraham was also quick to share information with his co-defendants, particularly information regarding other acquaintances who got caught.

| 528 | 123841 | 18452320939@s.whatsapp.net Shmule L. Abraham | He over shipped like a mother fucker | 5/25/2018 2:23:38 PM(UTC+0) |
|---|---|---|---|---|
| 529 | 123842 | 18454006839@s.whatsapp.net Heshl Abraham | Hahaha wow | 5/25/2018 2:23:47 PM(UTC+0) |
| 530 | 123843 | 18452320939@s.whatsapp.net Shmule L. Abraham | Like if they ordered 14 he shipped 8,000 | 5/25/2018 2:23:55 PM(UTC+0) |
| 531 | 123844 | 18454006839@s.whatsapp.net Heshl Abraham | So I guess you can only take the risk to overship on items that is selling | 5/25/2018 2:24:04 PM(UTC+0) |

9

| 535 | 123848 | 18452320939@s.whatsapp.net Shmule L. Abraham | If over ship over ship anything don't make difference | 5/25/2018 2:24:29 PM(UTC+0) |
|---|---|---|---|---|
| 536 | 123849 | 18452320939@s.whatsapp.net Shmule L. Abraham | Some they ordered 24 he shipped 5000 or 3000 | 5/25/2018 2:24:47 PM(UTC+0) |
| 537 | 123850 | 18452320939@s.whatsapp.net Shmule L. Abraham | Go figure | 5/25/2018 2:24:51 PM(UTC+0) |
| 538 | 123851 | 18454006839@s.whatsapp.net Heshl Abraham | Wow this guys had guts | 5/25/2018 2:25:06 PM(UTC+0) |

| 539 | 123852 | 18452320939@s.whatsapp.net Shmule L. Abraham | Why you think so ? | 5/25/2018 2:25:22 PM(UTC+0) |
|---|---|---|---|---|
| 540 | 123853 | 18452320939@s.whatsapp.net Shmule L. Abraham | Did I told you how much I over ship _x005F_xD83D__x005F_xDE45__x005F_xD83C__x005F_xDFFB_♂ | 5/25/2018 2:25:39 PM(UTC+0) |
| 541 | 123854 | 18454006839@s.whatsapp.net Heshl Abraham | I never overship so much | 5/25/2018 2:25:41 PM(UTC+0) |
| 542 | 123855 | 18452320939@s.whatsapp.net Shmule L. Abraham | Your problem | 5/25/2018 2:25:49 PM(UTC+0) |

When mutual acquaintances of the co-defendants got caught overshipping and had their accounts frozen or terminated, Shmuel Abraham even doubled down:

| 1374 | 132777 | 18452320939@s.whatsapp.net Shmule L. Abraham | I don't know what he's gonna do, but if I was him then I would use a new vendor account, I would fuck them over like you have no idea, it takes them time to realize what's happening, so in the beginning I would [fuck them over so badly](sounds like but unsure) you couldn't understand | 7/26/2018 3:15:02 PM(UTC+0) |
|---|---|---|---|---|

Simply put, the defendant schemed for years, with his co-conspirators, regarding the most effective ways to defraud Amazon, was under no illusion that his conduct was wrong, and nevertheless persisted.

### B. Procedural History

The defendant was arrested on August 19, 2020, and charged by indictment with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; one count of wire fraud (Count One), in violation of Title 18, United States Code, Section 1343

(Count Two), and one count of making financial transactions using criminal proceeds (Count Four), in violation of Title 18, United States Code, Section 1957.

### C. Plea Agreement, PSR, and Applicable Guidelines Range

On October 26, 2023, the defendant pleaded guilty to a Superseding Information that charged him with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371. (PSR ¶ 4). The Superseding Information also included a forfeiture allegation and the defendant executed a Consent Preliminary Order of Forfeiture.

As set forth in the plea agreement between the parties, at the time of the defendant's plea the November 1, 2021 Guidelines Manual applied. (PSR ¶ 4(a)). The agreement, however, also included the calculations under the November 1, 2023 Guidelines Manual, in the event sentencing occurred after the new Guidelines Manual came into force. (PSR ¶ 4(l)). Under the November 1, 2023 Guidelines Manual, pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is six. At the time of the plea, the parties agreed that there was a loss to the victim but that it reasonably could not been determined; accordingly, the gain to the defendant was used as an alternative measure of loss, pursuant to §2B1.1, Application Note 3(B). An 18-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the defendant's gain was more than $3,500,000, but less than $9,500,000. A two-level increase is warranted, pursuant to 2B1.1.(b)((10)(c) because the defendant intentionally engaged in or caused conduct constituting sophisticated means in connection with the offense. Pursuant to U.S.S.G. § 4C1.1, the offense level decreases by two levels because the defendant meets the relevant criteria of that section. Assuming the defendant demonstrates acceptance of responsibility, a three-level reduction is warranted, pursuant to U.S.S.G. §3E1.1(a) and (b), resulting in a total offense level of 19. The defendant has no prior criminal history, resulting in a Criminal History Category of I. Accordingly, the applicable Guidelines range is 30 to 37 months' imprisonment. (PSR ¶ 4(a)-(l)).

In connection with his guilty plea, the defendant also executed a consent preliminary order of forfeiture with respect to Count 1 of the Superseding Information and agreed to forfeit, pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461(c): ((i) a sum of money equal to $1,232,830 in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"); and (ii) all right, title and interest of the defendant in the following specific property: (1) $62,894 in U.S. currency. As provided in the consent order, the amount reflected in the money judgment may be satisfied (in part) by the funds obtained from the specific property. The defendant also agreed to pay restitution in amount to be determined by the Court.

### D. Discussion

1. <u>Applicable Law</u>

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that

"'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) the four legitimate purposes of sentencing, as set forth below, *see id.* § 3553(a)(2); (3) "the kinds of sentences available," *id.* § 3553(a)(3); (4) the Guidelines range itself, *see id.* § 3553(a)(4); (5) any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); (6) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (7) "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent that a district court imposes a sentence outside the range recommended by the Guidelines, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50) (internal quotation marks omitted).

2. A Sentence at the Low End of the Guidelines Is Appropriate

The Government respectfully submits that a sentence at the low end of the Guidelines range of 37 to 46 months' imprisonment would be fair and appropriate. As set forth below, a Guidelines sentence is necessary to address the seriousness of the defendant's crime, its effects on his victim, and to promote specific and general deterrence. To be sure, the defendant was younger than his co-defendants at the time of the offense, which mitigates his culpability. His contemporaneous communications with his co-conspirators, however, do not reflect that Shmuel Abraham was under their sway or otherwise beholden to his older co-conspirators. Rather, by his own account the defendant engaged in multiple different strategies to try to "fuck" Amazon as much as possible, and his intended loss amount is second only to Yoel Abraham. Taken together, these considerations warrant a custodial sentence, but one at the low-end of the Guidelines.

First, the scheme here was serious. It was brazen, sophisticated, and of long duration. The defendant built an entire business—hiring employees, cultivating sources regarding Amazon's vendor and seller systems—for the sole purpose of bilking another business. His communications

with his co-defendants reflect that Shmuel Abraham devoted considerable time and effort, with his co-defendants, to testing and developing different ways to trick Amazon's systems into paying for products it did not want, at outrageous prices and in excessive quantities. Even worse, the defendants abused a victim that was providing them with the opportunity they purportedly most wanted: to open their own businesses and provide a good life for themselves and their families.

Compounding the seriousness of the offense is that there is no justification for the defendant's conduct other than greed. The defendant openly avowed his intention to "fuck" Amazon and to get rich as quickly as possible. The defendants were open amongst themselves that they could have operated their businesses legitimately and enjoyed a comfortable lifestyle, but that was not what they wanted. The offense was not a momentary lapse of judgment or an act of desperation; it was a calculated effort to get rich quick by any means necessary.

Second, a Guidelines sentence is warranted by the significant losses caused by the offense and the need for adequate punishment to promote respect for the law. Amazon lost millions by wildly overpaying for commonplace goods and then incurred substantial expenses storing and (in many instances) destroying items it received. Amazon lost valuable personnel hours to detecting and reconstructing the defendants' fraud, as well as expenses incurred to reconstruct Amazon's systems. Shmuel Abraham, in particular, intended to cause approximately $9.4 million in losses, which is second only to Yoel Abraham for the greatest intended loss of any defendant in the conspiracy.

Third, a sentence of imprisonment is necessary here to promote specific deterrence. To be sure, the defendant was in his early 20s at the time of the offense and his relative youth is a mitigating factor, as discussed below. Nevertheless, his age does not warrant a non-incarceratory sentence when balanced against his offense conduct. The defendant's communications with his co-defendants reflect that he was a sophisticated participant in the scheme. He openly avowed his desire to amass wealth as quickly as possible and not in response to some demonstrable need, but out of pure greed. He was undeterred when Amazon suspended or froze the accounts of others—clear red flags that his conduct was fraudulent and illegal. Instead, his declared intent was to double down. Moreover, it bears noting that this offense was committed over more than a year, through thousands of transactions. It did not result from mere impulsivity. To put it another way, the defendant's seriousness of purpose and demonstrated commitment to the scheme should not be rewarded with a non-custodial sentence, even though he was young when he committed the crime.

Fourth, a sentence within the Guidelines Range is necessary for general deterrence. The legislative history of 18 U.S.C. § 3553 demonstrates that "Congress viewed deterrence as 'particularly important in the area of white-collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). General deterrence is an important sentencing factor in fraud and white-collar cases because it is seen as effective. *Martin*, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (quotation marks and citation omitted). A Guidelines sentence will signal to others

13

that crimes against corporations, even those as deep-pocketed as Amazon, will be met with serious punishment. This is a particularly relevant aim of sentencing here, where the defendants' communications make clear that they had other acquaintances who engaged in similar fraudulent schemes against Amazon. A custodial sentence is required here precisely to ensure that others similarly situated—and who have simply not yet been caught—are deterred from continuing their schemes.

Balanced against these considerations is the defendant's relative youth at the time of the offense. While the defendant's communications with his co-defendants suggest that he was more dedicated and sophisticated than some of his co-defendants regarding how to perpetrate the scheme, the same communications betray a bravado and lack of maturity characteristic of young offenders who do not appreciate the consequences of their actions. Although the defendant's relative youth is not sufficient to warrant a non-custodial sentence here, the Government submits that it supports a sentence at the low-end of the Guidelines range.

### E. Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence at the low end of the stipulated Guidelines range would be fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS

United States Attorney

By: _____
Jilan J. Kamal
Assistant United States Attorney
(212) 637-2192

cc: Counsel by ECF